UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


LINDA BERNARD,

      Plaintiff,

vs.                                                      Case No. 12-14680

FEDERAL NATIONAL MORTGAGE                HON. AVERN COHN
ASSOCIATION, and WELLS FARGO, N.A.,

      Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS OR
FOR SUMMARY JUDGMENT (Doc. 5)
AND
DISMISSING CASE**

**I.  Introduction**

      This is another one of many cases pending in this district involving a default on a

mortgage and subsequent foreclosure proceedings.  As will be explained, plaintiff Linda

Bernard defaulted on a mortgage loan used to finance her purchase of residential

property located at 17144 Wildemere Street, Detroit, Michigan ("Wildemere Property").

The redemption period has expired.  Nevertheless, plaintiff contends she has a right to

the property.  Plaintiff is suing defendants Federal National Mortgage Association

("Fannie Mae") and Wells Fargo, N.A. ("Wells Fargo").

      Plaintiff claims that: (1) defendants wrongfully foreclosed under Michigan's

foreclosure by advertisement statute, Mich. Comp. Laws § 600.3204, because the

attestation on the assignment was fraudulent (Count I); (2) Fannie Mae is a government

actor that violated plaintiff's Fifth Amendment rights by depriving her of her property

without due process (Counts II and IV); (3) Wells Fargo violated numerous sections of Michigan's foreclosure by advertisement statute by failing to meet and work with plaintiff to determine whether she was qualified for a loan modification, by failing to follow the HAMP guidelines in making that determination, by failing to send her a copy of the calculations relative to her eligibility determination, by failing to find her eligible for a loan modification, and by proceeding with a non-judicial foreclosure (Counts III and IV); and (4) Wells Fargo violated the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3605, by denying her request for a loan modification because she was African-American (Count V).  Plaintiff also alleges a claim for exemplary damages (Count VI).

Before the Court is defendants' motion to dismiss or for summary judgment.[1]  For the reasons that follow, the motion will be granted.

## II.  Background

On April 24, 2006, plaintiff executed a mortgage on the Wildemere Property and a promissory note in the amount of $259,500.00.  Plaintiff's 30-year mortgage on the Wildemere Property identifies Mortgageit, Inc. as lender, plaintiff as borrower, and MERS as mortgagee and nominee for the lender.  The mortgage was recorded on March 23, 2007.

On April 21, 2011, MERS, as nominee for Mortgageit, Inc., assigned the mortgage to Wells Fargo.  This assignment was recorded on April 27, 2011.

Plaintiff defaulted on her mortgage loan, and attempted to work out a loan modification after her receipt of a notice letter from Wells Fargo's counsel, Trott & Trott,

---

[1]This case was recently assigned to the undersigned upon the disqualification of the original district judge.  See Doc. 16.

2

and after notice was published informing her of the right to request a meeting with the mortgage holder or mortgage servicer.  Plaintiff received some assistance in obtaining either a loan modification or a short sale from a Housing Specialist at City Vision Alliance.  However, plaintiff did not obtain either a loan modification or a short sale.

Accordingly, Wells Fargo pursued foreclosure by advertisement under M.C.L. §§ 600.3201, *et seq.*  On August 2, August 9, August 16 and August 24, 2011, Wells Fargo's counsel had notice of an August 31, 2011 sheriff's sale of the Wildemere Property published in the Detroit Legal News, and a similar notice was posted on the Wildemere Property on August 5, 2011.

The original Sheriff's sale date of August 31, 2011 was adjourned to November 9, 2011.  On November 9, 2011, a Sheriff's sale was held, and Wells Fargo was the purchaser of the Wildemere Property for $265,707.69.  The Sheriff's Deed was recorded on November 18, 2011.

On November 11, 2011, Wells Fargo quit claimed the Wildemere Property to Fannie Mae.  The Quit Claim Deed was recorded on December 12, 2011.

Under Michigan law, plaintiff had six months to redeem the Wildemere Property. *See* M.C.L.§ 600.3240.  The six-month redemption period expired on May 9, 2012.

Plaintiff failed to redeem the Wildemere Property within the six-month statutory redemption period, and title to the property vested in Fannie Mae on that date.  *See* M.C.L. § 600.3236.

Fannie Mae subsequently brought an action in Michigan's 36th District Court in Detroit, Michigan against plaintiff and all other occupants of the Wildemere Property to recover possession of the property.  On June 25, 2012, the 36th District Court

3

adjourned the eviction action until September 25, 2012, to allow plaintiff time to file an action in the Wayne County Circuit Court.

On September 17, 2012, plaintiff filed a complaint in Wayne County Circuit Court. In addition to money damages, plaintiff seeks to have the November 9, 2011 Sheriff's Sale set aside, the mortgage foreclosure declared void *ab initio*, and title quieted in her name.  On October 23, 2012, defendants removed the case to federal court and later filed the instant motion to dismiss or for summary judgment.

### III.  Legal Standards

### A.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  In a light most favorable to the plaintiff, the court must assume that the plaintiff's factual allegations are true and determine whether the complaint states a valid claim for relief.  See Albright v. Oliver, 510 U.S. 266 (1994); Bower v. Fed. Express Corp., 96 F.3d 200, 203 (6th Cir. 1996).  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations and emphasis omitted).  See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir. 2007).  "[T]hat a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of all the elements of a cause of action, supported by mere conclusory statements do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) The court is "not bound to accept as true a legal conclusion couched as a factual

4

allegation." Id. at 679 (internal quotation marks and citation omitted).  Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss."  Id. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief."  Id. (internal quotation marks and citation omitted).  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.  In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face."  Id. at 678 (internal quotation marks and citation omitted).

## B.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A moving party may meet that burden "by 'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Revised Rule 56 expressly provides that:

5

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
>
> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;
>
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
>
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).  "The court need consider only the cited materials, but it may consider other materials in the record."  Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Electric Industries Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, *id.* at 587, drawing "all justifiable inferences in the light most favorable to the non-moving party," Hager v. Pike County Bd. Of Education, 286

6

F.3d 366, 370 (6th Cir. 2002).

## IV.  Analysis

### A.  Fifth Amendment Due Process - Counts II and IV

As an initial matter, in Counts II and IV, plaintiff alleges that Fannie Mae violated her due process rights.  Because these allegations do not relate to the foreclosure proceedings and because the claims fail to state a plausible ground for relief, they are first addressed.

It is well-established that constitutional claims cannot be maintained absent state action.  See Rubin v. Fannie Mae, No. 12-cv-12832, 2012 WL 6000572, at * 2 (E.D. Mich. Nov. 30, 2012) (citing Northrip v. Fed. Nat'l Mortg. Ass'n, 527 F.2d 23, 25 (6th Cir. 1975)).  Plaintiff argues that, by virtue of FHFA's conservatorship, Fannie Mae is a government actor that can be held liable for constitutional violations.  This argument is not well-taken.  Several federal courts addressing similar claims have held that Fannie Mae, and similar entity Freddie Mac, are not governmental actors post-conservatorship. See Herron v. Fannie Mae, 857 F. Supp. 2d 87, 95-96 (D. D.C. 2012); Lopez v. Bank of America, N.A., No. 1:12-CV-667, 2013 WL 150460 at *2-3 (W.D. Mich. Jan. 14, 2013); Kapla v. FNMA (In re Kapla), No. 11-68878, 2012 WL 6569739, at *8-16 (Bankr. E.D. Mich. Dec. 14, 2012); Rubin v. Fannie Mae, No. 12-cv-12832, 2012 WL 6000572, at *2-3 (E.D. Mich. Nov. 30, 2012); Syriani v. Freddie Mac Multiclass Certificates, Series 3365, No. CV 12-3035-JFW, 2012 WL 6200251, at *4 (C.D. Cal. July 10, 2012).  The Court agrees with these decisions, as explained below.

Fannie Mae operates in the secondary mortgage market, purchasing residential

7

mortgages and "thereby providing mortgage lenders with capital to fund additional mortgage loans."  Herron, 857 F. Supp. 2d at 89-90.  In 1968, Congress privatized Fannie Mae by partitioning the Federal National Mortgage Association as it then existed into one entity that would "remain in the Government" (the Government National Mortgage Association, which is not a party to this case and had no involvement in the facts and circumstances alleged), and a separate, second entity that would become a "private corporation" -- Fannie Mae.  See 12 U.S.C. § 1716b.

In Mid-2008, Congress empowered FHFA to act as conservator or receiver of Fannie Mae in certain circumstances for purposes of "reorganizing, rehabilitating, or winding up [its] affairs."  12 U.S.C. § 4617(a)(2).  On September 6, 2008, FHFA's Director placed Fannie Mae (and Freddie Mac) into conservatorship.

Plaintiff, similar to the plaintiffs in Herron, Lopez, Rubin, In re Kapla, and Syriani, argues here that because FHFA, a federal agency, became Fannie Mae's conservator in 2008, the case law holding that it is not a state actor is no longer relevant."  Syriani, 2012 WL 6200251 at *4.  This argument has been soundly and consistently rejected.  As one court explained:

> [T]he Federal Housing Finance Agency, as conservator for Freddie Mac, "step[ed] into the shoes" of Freddie Mac, much like a bankruptcy trustee. *See* 12 U.S.C. § 4617(b)(2)(A)(1) (FHFA Conservator, immediately upon the inception of conservatorship, succeeds to "all rights, titles, powers, and privileges of the regulated entity, and of any stockholder, officer, or director"); Herron v. Fannie Mae, 857 F. Supp. 2d 87, 2012 WL 1476051 (D. D.C. Apr. 30, 2012) ("Thus, like FDIC when it serves as conservator or receiver of a private party, FHFA when it serves as conservator 'step[s] into the shoes' of the private corporation, Fannie Mae."); O'Melveny & Myers v. FDIC, 512 U.S. 79, 86-87, 114 S. Ct. 2048, 129 L. Ed. 2d 67 (1994) (under a materially identical statute, "the FDIC as receiver 'steps into the shoes' of the [pre-existing institution], obtaining the rights 'of th[e]

institution' that existed prior to receivership."); Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 144 (D. DC. 2011); United States v. Beszborn, 21 F.3d 62, 68 (5th Cir. 1994). Therefore, Freddie Mac does not become a governmental actor for Fifth Amendment purposes merely because it is placed into conservatorship. The Federal Housing Finance Agency's "control" is merely the same control that Freddie Mac had before the conservatorship. As the Court in Herron succinctly concluded, "**Fannie Mae was not converted into a government entity when it was placed into conservatorship; instead, FHFA stepped into the shoes of Fannie Mae. FHFA as conservator for Fannie Mae is not a government actor**." Herron, 2012 WL 1476051 at *6. In addition, the temporary nature of the Federal Housing Finance Agency's conservatorship of Freddie Mac also supports the conclusion that Freddie Mac has not been transformed into a governmental actor. Herron, 2012 WL 1476051, at *7 (holding that **because the Federal Housing Finance Agency's conservatorship "is by nature temporary, the government has not acceded to permanent control over the entity and Fannie Mae remains a private corporation**").

Syriani, 2012 WL 6200251 at *4 (emphasis added).

Consistent with the other federal courts that have addressed the same issue, the FHFA's conservatorship of Fannie Mae does not and cannot transform a private corporation into a government actor under the Lebron[2] test because FHFA, as conservator, merely "steps into the shoes" of Fannie Mae, a private corporation. Moreover, consistent with the decisions discussed above, the FHFA's conservatorship does not create the type of permanent control required under Lebron. Accordingly, the Court holds that Fannie Mae is not a government actor that can be held liable for an alleged Fifth Amendment due process violation.

## B. Expiration of the Redemption Period

Before addressing plaintiff's claims that relate to the foreclosure proceedings, it is

---

[2]Lebron v. National Railroad Passenger Corp., 513 U.S. 374 (1995).

9

undisputed that plaintiff failed to exercise her statutory right to redeem the foreclosed Wildemere Property before the six-month statutory redemption period expired.  As the Court of Appeals for the Sixth Circuit and Michigan Supreme Court recently observed, this fact has significant consequences.

"[U]nder Michigan's foreclosure statute, 'all the right, title and interest which the mortgagor had at the time of the execution of the mortgage' vests in the entity that purchased the foreclosed property in the sheriff's sale after the expiration of the redemption period."  El-Seblani v. IndyMac Mortg. Servs., No. 12-1046, 2013 WL 69226, *3 (6th Cir. Jan. 7, 2013) (quoting M.C.L.§ 600.3236 and citing Piotrowski v. State Land Office Bd., 302 Mich. 179 (1942), as support).  "A strict reading of the statute suggests that once the redemption period expires, the homeowner has no legal interest in the property that litigation might vindicate."  Id.

Michigan courts do, however, "allow 'an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice' in order to keep a plaintiff's suit viable, provided he makes 'a clear showing of fraud, or irregularity' by the defendant."  Id. (quoting Schulthies v. Barron, 16 Mich. App. 246 (1969)).  "The misconduct must relate to the foreclosure procedure itself."  Id.  "Moreover, because the foreclosure statutes are intended to create finality and certainty in property rights, an action challenging foreclosure must be brought 'promptly and without delay.'"  Id. (quoting Richard v. Schneiderman & Sherman, PC, 294 Mich. App. 37 ( 2011), rev'd on other grounds, 490 Mich. 1001 (2012)).  Thus, plaintiff can bring an action to challenge the foreclosure

10

proceedings after the expiration of the redemption period.  The scope of relief, however, is circumscribed, as explained below.

### C.  Setting Aside the Foreclosure

To the extent plaintiff argues that because of the statutory violations that she alleges Wells Fargo committed, the foreclosure sale of the Wildemere Property should be declared void *ab initio*, it is not well-taken.  A very recent Michigan Supreme Court decision held, contrary to an earlier Sixth Circuit decision, that under Michigan law a failure to comply with the requirements of Michigan's foreclosure by advertisement statute renders the foreclosure voidable, not void *ab initio*.  See Kim v. JPMorgan Chase Bank, N.A., ___ N.W.2d ___, 2012 WL 6858059, *5-6 (Mich. Dec. 21, 2012) (reviewing Davenport v. HSBC Bank USA, 739 N.W.2d 383, 384 (Mich. Ct. App. 2007), the decision the Sixth Circuit relied upon for its contrary holding in Mitan v. Fed. Home Loan Mortg. Corp., ___ F.3d ___, 2012 WL 6200257 (6th Cir. Dec. 12, 2012), and holding that "Davenport's holding was contrary to the established precedent of [the Michigan Supreme] Court.").  Thus, under controlling Michigan law, the foreclosure sale cannot be declared void *ab initio*.  See Savedoff v. Access Group, Inc., 524 F.3d 754, 762 (6th Cir. 2008) (observing that federal courts must follow the decisions of the state's highest court when applying state law).  So, the issue this Court must now address is whether, under Michigan law, the foreclosure sale on the Wildemere Property is voidable, or could be set aside, on the facts alleged.

The Michigan Supreme Court's recent decision in Kim instructs on this issue as well.  "[T]o set aside the foreclosure sale, plaintiffs must show that they were prejudiced

by defendant's failure to comply with [Michigan's foreclosure by advertisement statute]."
*Id.* at *6.  "To demonstrate such prejudice, they must show that they would have been in
a better position to preserve their interest in the property absent defendant's
noncompliance with the statute."  Id.  The concurring opinion by Justice Markman
provides further guidance "concerning the nature of the 'prejudice' that plaintiffs must
demonstrate in order to set aside the foreclosure;" and, in that regard, provides a
nonexhaustive list of factors to be considered.  Id. at *9.  These include:  (1) "whether
plaintiffs were misled into believing that no sale had been had;" (2) "whether plaintiffs
act[ed] promptly after [becoming] aware of the facts on which they based their
complaint;" (3) "whether plaintiffs made an effort to redeem the property during the
redemption period;" (4) "whether plaintiffs were represented by counsel throughout the
foreclosure process;" and (5) "whether defendant relied on the apparent validity of the
sale by taking steps to protect its interest in the subject property."  Id. (Markman, J.
concurring) (internal quotation marks and citations omitted).

Applying Kim, plaintiff cannot establish the prejudice required to set aside the
foreclosure sale of the Wildemere Property.  This is so because none of plaintiff's claims
relating to her mortgage and the foreclosure proceedings are viable, as explained
below.

### D.  Plaintiff's Claims

#### 1.  Fraud Based Claims - Counts I, III, and IV

In Count I plaintiff alleges fraud, i.e., that the attestations on the April 21, 2011
and May 5, 2011 assignments were fraudulent.  However, plaintiff neither alleges facts

nor submits any proof to support her bald statement that Shelaya Glass and Mark Lee were robo-signers with no personal knowledge of the transaction.[3]  This is insufficient to defeat defendants' motion.  Moreover, even if plaintiff's allegations or proof were sufficient, the Sixth Circuit has observed in a recent mortgage foreclosure case that "any defect in the written assignment of the mortgage would make no difference where both parties to the assignment ratified the assignment by their subsequent conduct in honoring its terms, and that [the plaintiff], as stranger to the assignment, lacked standing to challenge its validity."  Yuille v. Am. Home Mortg. Servs., Inc., 483 F. App'x 132, 135 (6th Cir. 2012) (internal citations omitted).[4]  Thus, Count I must be dismissed.

In Counts III and IV, plaintiff alleges several irregularities, i.e., that Wells Fargo violated several of Michigan's foreclosure by advertisement statutory requirements.[5]  As a result of these irregularities in the foreclosure proceedings, plaintiff says that she is

---

[3]Plaintiff's submission of a Consent Judgment that Wells Fargo entered into on April 13, 2011 with the Board of Governors of the Federal Reserve System does not support her allegation of fraudulent assignments of her mortgage.  Review of the Consent Judgment reveals that the Consent Order did not constitute "an admission" by Wells Fargo "or any of its subsidiaries of any allegation made or implied by the Board of Governors in connection with this matter" and was entered into "solely for the purpose of settling this matter without a formal proceeding being filed. . . ." provided that, "[n]othing in this Order, express or implied, shall give any person or entity, other than the parties hereto, and their successors hereunder, any benefit or any legal or equitable right, remedy, or claim under this Order.  (Id. at 10.)

[4]To the extent the decision in Talton v. BAC Home Loans Servicing LP, 839 F. Supp. 2d 896 (E.D. Mich. 2012) holds otherwise, the Court declines to adopt its reasoning and result.

[5]To the extent plaintiff argues that the foreclosure sale must be voided ab initio because her mortgage and note were impermissibly separated and thus rendered unenforceable, this argument has been rejected by the Michigan Supreme Court.  See Residential Funding Co., LLC v. Saurman, 490 Mich. 909 (2011).

13

entitled to have title to the property quieted in her name.  Even assuming that her

allegations of noncompliance with Michigan's foreclosure by advertisement are true

under the Rule 12(b)(6) standard, plaintiff cannot demonstrate that she would have

been in a better position to preserve her interest in the property absent Wells Fargo's

alleged noncompliance.  See Kim, 2012 WL 6858059 at *6.  First, plaintiff has not and

cannot establish that she was misled into believing that no Sheriff's sale took place, i.e.,

she submits evidence acknowledging that the original August 31, 2011 date for the

Sheriff's sale was postponed to November 9, 2011 and knew that the Sheriff's sale took

place on November 9, 2011.  Second, although not represented by counsel throughout

the foreclosure process, plaintiff acknowledges assistance in this process by a Home

Specialist at City Vision Alliance and submits a memorandum that indicates that she is

an attorney with an L.L.M. degree.  Third, plaintiff cannot dispute that she allowed

Michigan's statutory redemption period to expire on May 9, 2012 without attempting to

exercise her right to redeem.  Similarly, she cannot dispute that, despite knowledge of

facts underlying her claims that she qualified for a loan modification and that Wells

Fargo wrongfully denied her that modification and violated Michigan's foreclosure by

advertisement statute, she made no effort to take advantage of the statutory remedy

available to borrowers like her by "fil[ing] an action . . . to convert the foreclosure

proceeding to a judicial foreclosure."  Mich. Comp. Laws § 600.3205c(8).

  Overall, plaintiff cannot establish prejudice based on a claimed violation of HAMP

guidelines and thus cannot establish that she is entitled to an equitable extension of the

statutory six-month redemption period.  Accordingly, plaintiff's claims of illegal

14

foreclosure based on alleged violations of Michigan's foreclosure by advertisement statute and the HAMP guidelines and her quiet title claim must be dismissed.[6]

## 2. Fair Housing Claim - Count V

In Count V, plaintiff claims that Wells Fargo violated the Fair Housing Amendments Act of 1988 ("FHAA"), 42 U.S.C. § 3605, by denying her loan modification request because of improper racial discrimination.  "To state a claim for relief under § 3605," plaintiff must show that:  (1) she is "a member of a protected class;" (2) she "attempted to engage in a 'real estate-related transaction'" with the defendant and "met all relevant qualifications for doing so;" (3) the defendant "refused to transact business with the plaintiff[ ] despite [her] qualifications; and (4) the defendant "continued to engage in that type of transaction with other parties with similar qualifications." Mich. Protection and Advocacy Serv., Inc. v. Babin, 18 F.3d 337, 346 (6th Cir. 1994).  Despite plaintiff's argument to the contrary, she has not alleged facts nor submitted evidence that creates a genuine issue of material fact as to whether she was qualified for a loan modification; an essential element of her FHAA claim.  Because plaintiff has not submitted an affidavit or declaration showing that this information is not available to her, the Court rejects her argument that additional discovery is required before summary

---

[6]To the extent plaintiff claims an alleged violation of HAMP, this claim also fails. Because there is no private right of action under HAMP, plaintiff cannot state a plausible claim for relief based on an alleged violation of HAMP. See Hart v. Countrywide Home Loans, Inc., 735 F. Supp. 2d 741, 748 (E.D. Mich. 2010) (recognizing that there is no implied or express private right to sue under HAMP and citing cases).  See also Yunanova v. BAC Home Loans Serv., LP, No. 2:10-cv-14156, 2012 WL 441161, *6 (E.D. Mich. Feb. 10, 2012) (rejecting a claim that the defendant violated HAMP, citing cases, and holding that "[t]his claim fails because, as widely held by Michigan and federal courts, there is no private right of action under HAMP.").

judgment may be granted on this claim.  <u>See</u> Fed. R. Civ. P. 56(d).  Accordingly, plaintiff cannot go forward on her FHAA claim.

### 3.  Exemplary Damages - Count VI

In Count VI, plaintiff purports to state a claim for exemplary damages .  However, "exemplary damages are a form of compensation for an injury . . . they do not qualify as a cause of action."  <u>Kozma v. Chelsea Lumber Co.</u>, No. 290713, 2010 WL 2836327, *8 (Mich. Ct. App. July 20, 2010).  Thus, Count VI must be dismissed because it does not state a viable claim for relief.

### V.  Conclusion

For the above-stated reasons, defendants' motion to dismiss or for summary judgment is GRANTED.  This case is DISMISSED.

SO ORDERED.


 S/Avern Cohn

UNITED STATES DISTRICT JUDGE



Dated:  March 27, 2013


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 27, 2013, by electronic and/or ordinary mail.


 S/Sakne Chami

Case Manager, (313) 234-5160


16